# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| JAMELL DESHAUNE CHARLES WATSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 17 C 6771 |
| v. | ) | |
| | ) | |
| VILLAGE OF RIVERDALE, ET AL., | ) | Judge Thomas M. Durkin |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION & ORDER

Plaintiff Jamell DeShaune Charles Watson sues defendants Officer Trenton Jordan and Officer Lakeisha Gray for excessive force and denial of medical treatment under 42 U.S.C. § 1983. Watson also sues defendant Village of Riverdale on a *Monell* theory. Currently before the Court is the Village's motion to dismiss Watson's *Monell* claim pursuant to Fed. R. Civ. P. 12(b)(6) and to strike his punitive damages claim against the Village pursuant to Fed. R. Civ. P. 12(f). R. 61. For the following reasons, the Court denies the Village's motion.

## Standard

A Rule 12(b)(6) motion challenges the "sufficiency of the complaint." *Berger v. Nat. Collegiate Athletic Assoc.*, 843 F.3d 285, 289 (7th Cir. 2016). A complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), sufficient to give defendant "fair notice" of the claim and the basis for it. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This standard "demands more than an unadorned, the-defendant-unlawfully-

harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While "detailed factual allegations" are not required, "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. The complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Boucher v. Fin. Sys. of Green Bay, Inc.*, 880 F.3d 362, 366 (7th Cir. 2018) (quoting *Iqbal*, 556 U.S. at 678). In applying this standard, the Court accepts all well-pleaded facts as true and draws all reasonable inferences in favor of the non-moving party. *Tobey v. Chibucos*, 890 F.3d 634, 646 (7th Cir. 2018).

**Background**

On March 15, 2017, Watson was a passenger in a car that was the subject of a burglary investigation. R. 60 ¶ 11. Police began pursuing the car, and the car crashed into a fire hydrant. *Id.* After the crash, Watson exited the car and fled. *Id.* ¶ 12. Officers, including defendants Jordan and Gray, pursued him. *Id.* Jordan unsuccessfully attempted to tase Watson as he fled. *Id.* ¶ 13.

Eventually, when Watson was surrounded by officers about 50 yards from where he stood, he knelt on the ground and told the police officers that he surrendered. *Id.* ¶ 14. Watson alleges that even though he was not resisting, Jordan kicked him to the ground, hit him on the head, and then proceeded to alternately

2

tase and hit and kick Watson while he was on the ground. *Id.* ¶¶ 15-18. Jordan tased Watson a total of around seven times. *Id.* ¶ 18. At one point, Gray joined in kicking and hitting Johnson. *Id.* ¶ 19. Eventually, Jordan and Gray handcuffed Watson and walked him back to the field where the car crashed. *Id.* ¶ 21. While Jordan was handcuffing Watson, Jordan told Watson his injuries could have been worse because Jordan could have shot him. *Id.* ¶ 33. When Watson verbally confronted Jordan about the assault, Jordan told Watson that "he assaulted anyone who fled from him." *Id.* ¶ 22.

When Watson arrived at the Riverdale Police Department, his eye was swollen shut and he had difficulty standing. *Id.* ¶ 24. He began vomiting into a trash can, and while he did, Jordan picked him up and kicked the trash can away, telling him there was nothing wrong with him. *Id.*

When a detective later interviewed Watson, Watson told the detective about the beating, and the detective told Watson that Jordan had beat other individuals before. *Id.* ¶ 26. Watson does not allege that either the detective or anyone else followed up on Watson's allegations or that the Riverdale Police Department took any action in response to the beating. Watson remained in custody for three days, during which time he was given no medical treatment. *Id.* ¶¶ 29-30. He was ultimately charged with theft, burglary, battery, and resisting arrest, and later pled guilty to theft. *Id.* ¶ 31. Watson suffers from daily headaches and psychological trauma as a result of the beating and denial of medical treatment. *Id.* ¶¶ 35-36. Watson alleges that his "beating is part of a larger policy, pattern, and practice

3

employed by the Riverdale Police Department. Because of Defendant Riverdale's utter failure of supervision and oversight, other members of the public have been hurt by at least some of the same police officers." *Id.* ¶ 27.

In August 2018, Watson filed his third amended complaint against defendants. Counts I and III of the complaint are claims against Jordan and Gray for excessive force and denial of medical treatment under 42 U.S.C. § 1983. Count II is a *Monell* claim against the Village. Watson alleges that the Village's officers "followed an unwritten and ongoing policy or custom . . . of beating individuals who flee from the Riverdale Police Department." R. 60 ¶ 52. He claims the Village "knew that its officers beat individuals who flee from them, but that as a custom and practice, the Department was not taking steps to reasonably investigate the allegations." *Id.* ¶ 53. He claims that "Riverdale's custom, policy, and/or practice of failing to investigate allegations that its officers beat individuals who flee from them . . . intentionally deprived [Watson] of his constitutional rights and caused him other damages." *Id.* ¶ 54. In his requests for relief, Watson seeks, among other remedies, "punitive damages against all Defendants jointly and severally in an amount to be determined at trial." *Id.* at p. 24.

## Discussion

The Village moves to dismiss Count II for failure to state a claim and moves to strike Watson's request for punitive damages against the Village. The Court addresses each argument in turn.

4

## I. Count II – *Monell*

"Under *Monell* [*v. New York City Dep't of Social Services*, 436 U.S. 658, 690-91 (1978)], a municipality like the Village may be liable under § 1983 for constitutional violations caused by (1) an express municipal policy; (2) a widespread, though unwritten, custom or practice; or (3) a decision by a municipal agent with final policymaking authority." *Kristofek v. Vill. of Orland Hills,* 832 F.3d 785, 799 (7th Cir. 2016). "The Seventh Circuit recently has cautioned that district courts may not apply a 'heightened pleading standard' to *Monell* claims." *Williams v. City of Chicago*, 2017 WL 3169065, at *8 (N.D. Ill. July 26, 2017) (quoting *White v. City of Chicago*, 829 F.3d 837, 844 (7th Cir. 2016)). "[A] plaintiff raising a *Monell* claim may rely solely on his own experience, rather than being required to plead examples of other individuals' experiences." *Williams v. City of Chicago*, 315 F. Supp. 3d 1060, 1079 (N.D. Ill. 2018) (citing *White*, 829 F.3d at 844).

Here, Watson has plausibly pleaded "a widespread, though unwritten, custom or practice," *Kristofek*, 832 F.3d at 799, on the part of the Village of allowing and failing to adequately address a specific type of repeated misconduct by its officers: beating individuals who flee. Watson's third amended complaint pleads specific statements by Jordan and a Riverdale detective supporting that Jordan has a known history of using excessive force in the arrest of individuals who flee. Watson's allegations that both Jordan and the detective spoke openly about Jordan's repeated misconduct when dealing with arrestees who flee, coupled with the fact that the Village appears to have taken no action in response to Watson's

5

injuries and complaints to the detective, supports an inference that the Village knew about and had a custom or practice of allowing and failing to address this type of misconduct. And the fact that another officer (Gray) allegedly joined in the beating of Watson bolsters the inference that the Village had a custom or practice of turning a blind eye to that misconduct by its officers. *See, e.g.*, *Brown v. Bryant*, 2018 WL 2201584, at *4 (N.D. Ill. May 14, 2018) (allegations of custom or policy allowing and turning a blind eye to correctional officers beating inmates stated a *Monell* claim); *Williams*, 2017 WL 3169065, at *8-9 ("Plaintiff's allegations of a pattern or practice of ignoring complaints of discrimination are enough to survive a motion to dismiss," where plaintiff alleged the City's failure to adequately respond only to her own allegations of repeated discrimination by her supervisor).

The Village claims that Watson "provides no factual basis" for its allegations of a custom or practice. R. 61 at 4. But the Village fails to directly address or grapple with Watson's allegations of Jordan's and the detective's statements, which support an inference that the Village knew about and condoned repeated misconduct. Unlike in *Gustafson v. Jones*, 117 F.3d 1015, 1022 (7th Cir. 1997), *Gill v. City of Milwaukee*, 850 F.3d 335, 344 (7th Cir. 2017), and *Johnson v. Cook Cty. Sheriff's Office*, 2018 WL 2193235, at *3 (N.D. Ill. May 14, 2018), on which the Village relies, Watson alleges more than simply isolated instances of individual misconduct to support his claim. The fact that misconduct in the form of beating arrestees who flee was openly discussed and (based on the facts as pleaded) no one addressed it or put a stop to it supports an inference that the treatment of Watson

6

was *not* a case of individual misconduct. Conversely, if this type of conduct was unusual, it would be unlikely to be openly discussed, and the detective and the Riverdale Police Department likely would have followed up on Watson's complaints. The Court therefore finds the facts as currently pleaded sufficient to state a *Monell* claim and declines to dismiss Count II.

## II. Punitive Damages

The Village also asks the Court to strike Watson's request for punitive damages against the Village. The Village objects to that request as premature, relying on this Court's decision in *Karney v. City of Naperville*, 2016 WL 6082354, at *14 (N.D. Ill. Oct. 18, 2016). Like in *Karney*, the Court "declines to strike [Watson's] prayer for" a form of relief "to which [Watson] may be entitled as against one or more of the other defendants in this case." *Id.* "The [Village's] arguments that it (as opposed to either of the officer defendants) cannot be held liable for punitive damages . . . are preserved for later proceedings in the case." *Id.*

## Conclusion

For these reasons, the Court denies defendant Village of Riverdale's motion to dismiss and to strike [61].

ENTERED:

*Thomas M Durkin*

Honorable Thomas M. Durkin
United States District Judge

Dated: October 11, 2018

7